Case 1:24-mj-00028-MAL   Document 1   Filed 06/17/24   Page 1 of 5
Case: 4:24-cr-00299-MTS-PLC *SEALED*   Doc. #: 1   Filed: 06/12/24   Page: 1 of 5
PageID #: 1

UNITED STATES DISTRCT COURT    **SUPPRESSED**
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

**FILED**
JUN 1 2 2024
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. |
| DARIONA LAMBERT, ) | **4:24CR299-MTS/PLC** |
| ███████████████ ) | |
| Defendants. ) | |

## INDICTMENT

### COUNT 1

**Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)**

#### The Conspiracy

1. Beginning no later than in or around February 2024, and continuing through at least in or around May 2024, in the Eastern District of Missouri and elsewhere, the defendants,

**DARIONA LAMBERT,**
███████████████
███████████████,

voluntarily and intentionally conspired, combined, and agreed with each other and others, known and unknown to the Grand Jury, to commit the following offense against the United States:

(a) Having devised and intended to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of

interstate electronic communications, in violation of Title 18, United States Code, Sections 1343.

All in violation of Title 18, United States Code, Section 1349.

### Object of the Conspiracy

2. The primary purpose of the scheme and artifice to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud was for the conspirators, including Defendant, to defraud elderly victims throughout the United States, including in the Eastern District of Missouri.

### Manner and Means

3. The scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud were carried out by the conspirators in the following manner:

4. Conspirators contacted elderly victims through telephone calls and electronic messages and made false representations in order to induce victims to use to use their savings and retirements funds to purchase gold bars, which the victims then gave to couriers working on behalf of the conspiracy.

5. Conspirators told victims that their financial accounts had been compromised, and that the victims needed to transfer funds to conspirators in order to maintain account security, transfers that sometimes took the form of liquidating accounts in order to purchase gold bars. Conspirators then directed couriers working on behalf of the conspiracy to meet with victims in person in order to retrieve the gold bars. Conspirators instructed couriers to schedule travel plans, which often included booking flights and making hotel reservations, to the towns where victims were located. Couriers worked with a "handler," also working on behalf of the conspiracy, who sometimes provided transportation to the couriers. The handler would transport the courier to a parking lot near the victim residence. The courier would then take a ride sharing service to the

victim's residence to pick up gold bars from the victim. Once the courier retrieved gold bars from a victim, the courier delivered the gold bars to the handler, who would subsequently ship the gold bars to other conspirators.

6. In at least one instance, conspirators instructed a courier to take a personal vehicle to retrieve gold bars from a victim at his residence. Conspirators then instructed the courier to meet with a handler to transfer the gold bars to the handler.

7. Conspirators provided couriers with detailed information regarding the victims, including residential address, name, and a driver's license. Conspirators instructed couriers to provide victims with a false name. Conspirators gave both the victims and the couriers a password to exchange during the gold bar pickup, steps which were intended to provide the victims with a false sense of security regarding the transaction.

8. Defendants Dariona Lambert ("Lambert") and ▮▮▮▮▮ worked as couriers on behalf of the conspiracy, and travelled to victims' residences in order to retrieve gold bars from the victims. One of these victims was located in the Eastern District of Missouri.

9. After Lambert and ▮▮▮▮▮ completed a pickup from a victim, conspirators would instruct the handler to pay Lambert and ▮▮▮▮▮ cash.

10. Defendant ▮▮▮▮▮ worked as a handler on behalf of the conspiracy, and rented vehicles he then used to transport couriers to complete gold bar pickups.

11. Conspirators, including Lambert, ▮▮▮▮▮ communicated about the scheme with each other through various means, including electronic messages exchanged via WhatsApp.

12. Lambert, ▮▮▮▮▮ and other conspirators caused the transmission of interstate wire communications in furtherance of the scheme.

13. Using the method described above, conspirators, including Lambert, ▮▮▮▮▮

3

▇▇, defrauded victims in numerous states, including Arizona, California, Florida and Missouri, in an amount exceeding $800,000.00.

### Defrauding Victim LML in the Eastern District of Missouri

14. In or about March 2024, conspirators contacted Victim LML, an 82-year-old resident of St. Louis, Missouri, in the Eastern District of Missouri. During the multiple conversations that conspirators had with LML, the conspirators falsely represented their identities as representatives from a computer software support team. Conspirators also falsely advised Victim LML that her financial accounts had been compromised, and that Victim LML needed to pay money to prevent her funds from being stolen.

15. Conspirators further instructed victim LML that she needed to open new bank accounts, transfer her money into those accounts, and to send a wire transfer of funds to an account held overseas in order to prevent the funds from being stolen. Conspirators also instructed victim LML to withdraw cash from her bank accounts in order to purchase approximately $250,000 in gold bars, bars which conspirators instructed victim LML an individual would come to her residence in order to retrieve.

16. As part of her role in the conspiracy, on May 1, 2024, Lambert flew from Gainesville, Florida to St. Louis, Missouri where Lambert and ▇▇ stayed at hotels located near Lambert International Airport. ▇▇ rented a car that he used to drive Lambert to a parking lot near victim LML's residence, from which Lambert then took an Uber vehicle to victim LML's residence for the purpose of retrieving the $250,000 in gold bars victim LML had purchased.

17. When Lambert was intercepted by law enforcement agents at LML's residence, she sent a WhatsApp message to the conspirators, saying "police."

18. All in violation of Title 18, United States Code, Section 1349.

4

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that;

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, or conspiracy to commit such offense, as set forth in Count 1, the Defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of property, real or personal, constituting or derived from any proceeds traceable to such violation.

3. If any of the property described above, as a result of any act or omission of the Defendant(s):

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

FOREPERSON

SAYLER A. FLEMING
United States Attorney

*signature*

Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney

5